J-S06038-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TRAMALE JAY LOCKETT | : | |
| | : | |
| Appellant | : | No. 1023 WDA 2024 |

Appeal from the Judgment of Sentence Entered April 1, 2024
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000800-2020

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: April 22, 2025**

Tramale Jay Lockett ("Appellant") appeals *pro se* from the judgment of sentence imposed following his convictions for two counts of driving under the influence (DUI) - controlled substance and the summary offenses of disregarding traffic lanes and careless driving.[1] After thorough review, we affirm.

Pennsylvania State Trooper Joshua Marsh was dispatched on June 28, 2020, after police received a 911 report that a white Nissan Altima had been driving erratically, swerving in the roadway and almost striking another

---

[1] 75 Pa.C.S. §§ 3802(d)(1)(i), 3802(d)(1)(iii), 3309(1), and 3714(a), respectively. Appellant was also charged with one count of DUI – impaired ability (75 Pa.C.S. § 3802(d)(2)), and possession of marijuana – small amount (35 P.S. § 780-113(a)(31)(i)). The jury found Appellant not guilty of the DUI – impaired ability charge, and the trial court dismissed the possession of marijuana charge after Appellant's trial but before sentencing, as discussed *infra*.

vehicle. N.T. Suppression, 6/16/21, at 6-7. Trooper Marsh located the Altima and followed it, observing it weave within its lane and cross both the fog and center lines multiple times. *Id.* at 7. After stopping the vehicle, Trooper Marsh approached the driver and smelled a strong odor of burnt marijuana; he then asked Appellant to exit the car. *Id.* at 11. The trooper testified that the driver's eyes were red and bloodshot, he appeared to be lethargic, he swayed as he walked, and he had a greenish tint on his tongue. *Id.* at 12. After Appellant failed field sobriety tests, the trooper placed him under arrest for driving under the influence and took him to a hospital for a blood test. *Id.* at 13. Appellant's blood test was positive for the active ingredient in marijuana (THC) as well as marijuana metabolites (carboxy THC), both of which indicate the presence of a Schedule I controlled substance. N.T. Jury Trial, 1/22/24-1/24/24, at 112-14. Appellant was charged with DUI and related offenses.

Appellant filed a motion to suppress on April 15, 2021. The motion was denied after a hearing on June 21, 2021. Prior to trial, the Commonwealth also filed a notice of its intent to admit the laboratory report, pursuant to Pa.R.Crim.P. 574, without in-person testimony from the laboratory scientist. After Appellant objected to this procedure, his trial was continued due to the unavailability of the scientist witness. On May 16, 2023, defense counsel also filed a motion under Pa.R.Crim.P. 600 due to the delay in bringing the case to trial. This motion was denied by the order dated September 7, 2023.

Prior to jury selection, on January 22, 2024, Appellant indicated to the

trial court that he wished to represent himself and filed a written waiver of counsel notice. Following a colloquy with the trial court, Appellant was granted permission to represent himself and his public defender was ordered to be available as stand-by counsel. N.T. Jury Trial at 15. On January 24, 2024, following his jury trial, Appellant was convicted of all charges except for the DUI – impaired ability charge.

After trial but prior to sentencing, Appellant filed two *pro se* motions, arguing, *inter alia*, that the evidence was insufficient to support his convictions and that the verdicts were against the weight of the evidence. In response, the trial court vacated the guilty verdict for the charge of possession of a small amount of marijuana because the Commonwealth failed to provide proof that the item found in Appellant's pocket and in the door of his car was marijuana. Order, 2/6/24. The verdict was otherwise upheld. Appellant was subsequently sentenced on April 1, 2024, to an aggregate term of one to five years of incarceration and ordered to pay various fines and costs.

Appellant then filed a *pro se* document entitled, "Post Conviction Relief Act," which the court properly treated as a post-sentence motion, in which he asked for, *inter alia*: a modification of his sentence to house arrest; copies of various pieces of evidence including a printout of the breathalyzer reading, the officer's dash-cam video, the 911 call, and the criminal complaint; reconsideration of the decisions to deny suppression and his Rule 600 motion;

and dismissal of his charges due to the inconsistent jury verdicts.[2] Appellant also claimed that the dash-cam video shown at trial was not the original and the breathalyzer testing device was not calibrated properly. In response, the court appointed Andrew Skala, Esq., to represent Appellant on his post-sentence motion and ordered the parties to brief the issues. Order, 4/17/24.

On June 25, 2024, Attorney Skala filed a motion to withdraw his representation, asserting that Appellant had requested him to do so. Appellant then filed his own motion entitled, "Strike of Counsel," on July 2, 2024, also seeking to have counsel removed due to incompetence. Appellant reiterated that he wished to proceed *pro se* and stated his intent to appear *pro se* for the post-sentence motion hearing. Motion, 6/24/24. After a hearing, the trial court granted Appellant's request to represent himself. Order, 7/8/24. Further, following the submission of briefs, the court denied the post-sentence motion in its entirety. Order, 7/29/24.

Appellant filed a timely *pro se* notice of appeal on August 5, 2024. In response to the court's order, Appellant filed a Pa.R.A.P. 1925(b) concise

---

[2] Notwithstanding the label of "Post Conviction Relief Act" in the title of the motion filed by Appellant, it was filed on April 10, 2024, within the required time for a post-sentence motion, by a *pro se* Appellant, and the motion addresses matters traditionally included in post-sentence motions. This document is clearly intended to be a post-sentence motion, despite the misleading title. **See Commonwealth v. Rapp**, 331 A.3d 17 (Pa. Super. 2025) (holding that defendant's motion for post-sentence relief was merely a motion seeking to schedule a restitution hearing, despite the title on the document; the court looked to the claims raised and relief requested within the motion).

statement of errors complained of on appeal on August 22, 2024.[3]  Thereafter, the court issued an order stating that Appellant's issues had been addressed in the prior opinions filed on September 7, 2023 and July 29, 2024.  The appeal is thus primed for our review.

Appellant's *pro se* brief to this Court is not a model of clarity and fails to comport to several of our Rules of Appellate Procedure.  If defects in an appellate brief are substantial, "the appeal … may be quashed or dismissed." Pa.R.A.P. 2101.  As we are able to discern Appellant's arguments, we conclude that appellate review is not hampered and we decline to take this drastic measure.  However, we remind Appellant that, "[a]lthough this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." **Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005).  Moreover, "[i]t is not the obligation of an appellate court to formulate [an] appellant's arguments for him." **Commonwealth v. Armolt**, 294 A.3d 364, 377 (Pa. 2023) (internal citation and quotation marks omitted).  We now turn to the issues Appellant raises:

> [I.] Did the trial court abuse its discretion in dismissing Appellant's motion to dismiss due to a violation of [Rule] 600?
>
> [II.] Did the Commonwealth violate Pa.R.Crim.P. 519 in that the criminal complaint was not filed within 5 days of his arrest?
>
> [III.] Did the preliminary hearing court err in holding Appellant's preliminary hearing *in absentia* and was this a violation of Appellant's due process rights?

---

[3] Appellant's concise statement, dated August 21, 2024, and filed August 22, 2024, was added to the certified record in this case on March 21, 2025.

[IV.] Was trial counsel ineffective?

[V.] Did the Commonwealth sufficiently prove that Appellant provided consent to draw his blood?

[VI.] Was the evidence sufficient to support his guilty verdicts?

[VII.] Did the court err in failing to grant suppression?

Appellant's Brief at unnumbered pages i-vi.

Before reaching the merits of Appellant's claims, we note that, in its brief to this Court, the Commonwealth argues that we should quash this appeal based upon Appellant's failure to file his Rule 1925(b) statement with the clerk of courts. Appellant had timely sent his concise statement of errors to this Court, and to the trial court judge, but not to the trial court clerk of courts for filing. By order dated December 17, 2024, this Court directed the clerk of courts in Indiana County to docket Appellant's Rule 1925(b) statement as having been filed on August 22, 2024, the date listed on the cash slip provided by Appellant. *See* Order, 12/17/24 (citing Pa.R.A.P. 751(b) (providing that appeal or other matter may be transferred from one court to another court by order of court or by order of prothonotary of any appellate court affected); Pa.R.A.P. 121(f) (providing that *pro se* filing by incarcerated person is deemed filed as of date filing was delivered to prison authorities for purposes of mailing as documented by properly executed cash slip)). The clerk of courts complied with our directive, and the concise statement is noted

on the trial court's docket.[4]   Accordingly, we decline the Commonwealth's renewed invitation to quash this appeal for failing to file a concise statement of errors.

*Rule 600*

In the first issue raised in his brief, Appellant challenges the denial of his motion to dismiss the charges filed against him due to a violation of Rule 600.   Appellant preserved his challenge on this issue through his pre-trial motion and by including the alleged error in his concise statement.

A trial court's decision regarding the dismissal of a case pursuant to Rule 600 will not be reversed on appeal absent an abuse of discretion. ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012).   "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will[,] … discretion is abused."   ***Id.*** (citation omitted).   The scope of our review is limited to the trial court's findings and the record evidence, viewed in the light most favorable to the Commonwealth as the prevailing party. ***Commonwealth v. Wholaver***, 989 A.2d 883, 899 (Pa. 2010).

Our Supreme Court has clarified the significance of Rule 600, as follows:

Rule 600 has the dual purpose of both protecting a defendant's

---

[4] The Commonwealth had also filed an application to quash this appeal, on identical grounds, on November 6, 2024.  Because the trial court had complied with our instructions, this Court denied the application to quash as moot on January 7, 2025.

constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases. To protect the defendant's speedy trial rights, Rule 600 ultimately provides for the dismissal of charges if the Commonwealth fails to bring the defendant to trial within 365 days of the filing of the complaint…, subject to certain exclusions for delays attributable to the defendant. Conversely, to protect society's right to effective prosecution prior to dismissal of charges, Rule 600 requires the court to consider whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control. **If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, the motion to dismiss shall be denied.** The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. As has been oft-stated, due diligence is fact specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing [that] the Commonwealth has put forth a reasonable effort. **If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.**

***Bradford***, 46 A.3d at 701-02 (cleaned up, emphasis added). ***See also***

***Commonwealth v. Johnson***, 289 A.3d 959, 982 (Pa. 2023) (reiterating that

dismissal is an appropriate remedy when the Commonwealth fails to exercise

due diligence).

Relevantly, Rule 600 provides, in pertinent part:

**(A) Commencement of Trial; Time for Trial**

\*\*\*

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*\*\*

**(C) Computation of time**

- 8 -

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

\*\*\*

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney … may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated.

Pa.R.Crim.P. 600.

The trial court addressed Appellant's Rule 600 issue in the opinion dated September 7, 2023. Therein, the court properly explained how to conduct a Rule 600 analysis:

The Rule 600 analysis entails three steps. First, the court must determine the "mechanical run date," which is three hundred and sixty-five days after the filing of the criminal complaint. If the trial has not commenced by this date, the court must next determine whether or not any excludable time exists pursuant to Rule 600([C]). This excludable time is then added to the mechanical run date and results in the "adjusted run date." If the trial takes place after the adjusted run date, the court must then conduct a due diligence analysis. If the Commonwealth acted with due diligence, then those periods of delay that are outside the control of the Commonwealth are added to the adjusted run date to arrive at a "final Rule 600 run date." If the trial does not occur on or before the final run date, the trial court must dismiss the charges.

Trial Court Opinion ("TCO"), 9/7/23, at 3. *See generally Commonwealth v. Carl*, 276 A.3d 743, 749 (Pa. Super. 2022) (similarly explaining the necessary steps for a Rule 600 analysis).

To begin the Rule 600 analysis, the trial court noted that the initial mechanical run date for Appellant's trial was August 13, 2021, which was one year from the date on which his complaint was filed (August 13, 2020). TCO at 4. We agree.

The next step in the Rule 600 analysis is to determine any excludable time which would, if found, be added to the adjusted run date. Pursuant to the Rule, periods of delay caused by the Commonwealth when the Commonwealth failed to act with diligence are not excluded from the adjusted run date calculation for the start of trial. Pa.R.Crim.P. 600(C)(1). If the reason for delay was not caused by the Commonwealth or is due to a reason beyond the Commonwealth's control, the time is excluded under Rule 600. **See Bradford**, **supra**.

At the outset, the complaint was filed during the Covid-19 pandemic when Pennsylvania courtrooms were closed, which impacted the run date for Appellant's trial. Pertinently, the Pennsylvania Supreme Court issued an order declaring that the Covid-19 judicial emergency, and the related courtroom closings in Pennsylvania, ended on August 31, 2021. **See** Order, 6/21/21. Thus, the period of time between the filing of Appellant's complaint (August 13, 2020) until the end of the emergency (August 31, 2021), or a total of 383 days, is properly excluded from the Rule 600 calculation and added to the mechanical run date. **Commonwealth v. Lear**, 325 A.3d 552, 563 (Pa. 2024) (holding that time periods where courts were closed due to global pandemic were excluded from Rule 600 calculations because the closures were

not caused by the Commonwealth). This calculation advances Appellant's adjusted run date to August 31, 2022. *Accord* TCO at 5.

Further, at the hearing on Appellant's Rule 600 motion, Indiana County District Attorney Robert F. Manzi, Jr., Esq., testified about other circumstances surrounding Appellant's prosecution. To prepare for trial, the Commonwealth had engaged an expert from NMS Labs, Dr. Daniel Isenschmid, who analyzed the testing of Appellant's blood. N.T. Hearing, 8/16/23, at 8. Trial was first scheduled for the week of November 21, 2021. *Id.* at 10. Unfortunately, Dr. Isenschmid was not available to testify that week, as he was on a previously-scheduled vacation. *Id.* Thus, the Commonwealth sought a continuance, which was granted, and trial was re-set to begin during the week of April 25, 2022. *Id.* at 11.

As Dr. Isenschmid was a necessary witness, and his unavailability for trial was not caused by the Commonwealth, this period of time must be deemed excludable and added to the adjusted run date for Appellant's trial. *See generally Carl*, 276 A.3d at 749. Therefore, the time period from November 21, 2021 (first trial date) and April 25, 2022 (second trial date after the Commonwealth's continuance due to Dr. Isenschmid's unavailability), a period of 155 days, must be added to the run date calculation. This makes the new adjusted run date for Appellant's trial February 2, 2023.

After the Rule 600 hearing and after obtaining a new trial date, when a staffer from the District Attorney's office contacted NMS labs about Dr. Isenschmid's availability for the week of April 25, 2022, Dr. Isenschmid

advised that he would be able to testify that week. N.T. Hearing at 12. When the Commonwealth followed up by forwarding a subpoena for the doctor's testimony four months later,[5] NMS asked if it were possible for Doctor Isenschmid to testify remotely. *Id.* When informed that remote testimony was not an available option and the doctor's personal appearance was required, NMS advised that the doctor would not be able to leave his home in Michigan. Accordingly, the Commonwealth filed a motion seeking to admit the lab report without the expert's testimony pursuant to Rule 574 on April 6, 2022.[6] *Id.* at 13-14. When Appellant filed his objection to proceeding without

---

[5] District Attorney Manzi explained at the Rule 600 hearing that when they first obtained the new date for trial in April of 2022, NMS labs indicated that Dr. Isenschmid would be available. N.T. Hearing at 11-12. NMS asked for a subpoena, and the District Attorney's office sent the subpoena on March 22, 2022, for the trial to begin on April 25, 2022. *Id.* However, due to a misunderstanding, NMS apparently did not recognize, until receiving the subpoena, that the doctor would have to personally appear.

[6] Rule 574 provides, in pertinent part:

> **(a)** In any trial, the attorney for the Commonwealth may seek to offer into evidence a forensic laboratory report supported by a certification … in lieu of testimony by the person who performed the analysis or examination that is the subject of the report.
>
> **(b) Notice.**
>
> (1) If the attorney for the Commonwealth intends to offer the forensic laboratory report and accompanying certification as provided in subdivision (a) as evidence at trial, the attorney for the Commonwealth shall file and serve … the defendant a written notice of that fact[.]
>
> ***

*(Footnote Continued Next Page)*

live testimony, the Commonwealth was forced to seek another continuance. *Id.* at 14. The Commonwealth filed a motion to continue due to the unavailability of Dr. Isenschmid on April 8, 2022. This request was granted, and the court set a new trial date of May 22, 2023.[7] *See* TCO at 7. Again, Dr. Isenschmid was a necessary witness, and his unavailability for trial was beyond the Commonwealth's control; accordingly, this period of time (from April 25, 2022 to May 22, 2023, or 392 days) was excludable from the run date calculation. Adding this excludable time gives us an adjusted run date of February 29, 2024.

After the revised trial date was set, Appellant filed his motion to dismiss pursuant to Rule 600. Motion, 5/16/23. In response, the trial court continued the trial date in order to conduct a hearing on Appellant's Rule 600 motion. Order, 5/17/23. The trial court also set a new trial date for January 22, 2024. This extension of time is not due to any fault by the Commonwealth, but was

---

**(c) Demand.**

> (1) Within 10 days[,] the defendant's attorney … may file and serve … a written demand for the person who performed the analysis or examination that is the subject of the forensic laboratory report to testify at trial.

> (2) If a written demand is filed and served, the forensic laboratory report and accompanying certification are not admissible[.]

Pa.R.Crim.P. 574.

[7] The record is unclear as to why the new trial date was set for more than a year after the last trial date.

necessary to permit adjudication of Appellant's Rule 600 motion, and also due to the trial court's schedule. Thus, the time from May 22, 2023, to the new trial date of January 22, 2024, or a total of 245 days, is further excludable time. Added to the last adjusted run date, this sets the final adjusted run date for Appellant's trial as October 31, 2024. Appellant's trial began on January 22, 2024, well in advance of the final adjusted trial date.

The trial court, in considering these periods of time with respect to Rule 600, first noted that even though the Commonwealth had notice of the first trial date after the status conference conducted on August 6, 2021, they did not contact Dr. Isenschmid to verify his appearance until September 22, 2021. Moreover, after knowing that the expert was unavailable for the new date, the Commonwealth waited to ask the court for a continuance until November 2, 2021. Thus, the trial court determined that the Commonwealth failed to use due diligence for the period of time from August 31, 2021 (when the Supreme Court lifted trial restrictions) to November 2, 2021 (when the Commonwealth requested the continuance). TCO at 7-8. This amounts to a period of 63 days. We agree that due diligence was lacking during this period of time, and the 63 days are properly counted against the Commonwealth for Rule 600 purposes. We have similarly included this time in our calculation of Appellant's adjusted run date.

We stress that "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." **Commonwealth v. Mills**, 162 A.3d 323, 325 (Pa. 2017). "[J]udicial delay is delay caused by the court,

rather than the Commonwealth, and is likewise excludable if the Commonwealth exercised diligence during that time." **Johnson**, 289 A.3d at 982 (citing **Commonwealth v. Harth**, 252 A.3d 600, 603 (Pa. 2021)). "[W]here a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." **Mills**, 162 A.3d at 325. In other words, where the Commonwealth is trial ready, it has exercised due diligence, and a delay arising from the court's own scheduling concerns does not count against the Commonwealth in the Rule 600 calculation. **See id.**

In conclusion, except for a period of 63 days in which the Commonwealth was not diligent, the delays in bringing this case to trial were not the Commonwealth's fault. Rather, the delays were caused by the Covid-19 pandemic, the unavailability of a necessary witness, the trial court's busy schedule, and Appellant's own prosecution of his various *pro se* motions. Appellant's trial was conducted within the appropriate time frame for Rule 600 purposes. The trial court did not abuse its discretion in denying Appellant's Rule 600 claim.

*Violation of Pa.R.Crim.P. 519*

Appellant next argues that the Commonwealth violated Rule of Criminal Procedure 519 because he was arrested on June 28, 2020, and the criminal complaint in his case was not filed until August 13, 2020. Rule 519 provides:

**(A) Preliminary Arraignment**

(1) Except as provided in paragraph (B), when a defendant has been arrested without a warrant in a court case, a

- 15 -

complaint shall be filed against the defendant and the defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay.

\*\*\*

**(B) Release**

(1) The arresting officer shall promptly release from custody a defendant who has been arrested without a warrant, rather than taking the defendant before the issuing authority, when the following conditions have been met:

(a) the most serious offense charged is a misdemeanor of the second degree or a misdemeanor of the first degree in cases arising under 75 Pa.C.S. § 3802;

(b) the defendant poses no threat of immediate physical harm to any other person or to himself or herself; and

(c) the arresting officer has reasonable grounds to believe that the defendant will appear as required.

(2) **When a defendant is released pursuant to paragraph (B)(1), a complaint shall be filed against the defendant within 5 days of the defendant's release**. Thereafter, the issuing authority shall issue a summons, not a warrant of arrest, and shall proceed as provided in Rule 510.

Pa.R.Crim.P. 519 (emphasis added).

In his brief, Appellant cites **Commonwealth v. Revtal**, 494 A.2d 399 (Pa. Super. 1985), in support of his claim that the Rule 519 violation mandates a dismissal of his charges. However, this Superior Court decision is inapplicable, as it was reversed by our Supreme Court on appeal. **Commonwealth v. Revtal**, 532 A.2d 1 (Pa. 1987). Currently, defects in criminal court matters related to the form or content of a criminal complaint, or defects in procedures related thereto, are set forth in Rule of Criminal

- 16 -

Procedure 109 (formerly, Rule 150). That Rule provides:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant.

Pa.R.Crim.P. 109.

Pertinent to Appellant's claim, *Revtal* holds that a violation of the five-day rule for filing a complaint is not self-executing and does not automatically trigger the dismissal of a complaint. *Revtal*, 532 A.2d at 10. Rather, a defendant in this situation may follow the procedure in Rule 109 and seek dismissal for the Rule violation, but he or she must (1) do so before the conclusion of the preliminary hearing and (2) demonstrate prejudice. *Id.*

Here, Appellant fails on both accounts. Appellant did not challenge the violation of the five-day rule prior to the conclusion of his preliminary hearing; he actually failed to appear for the hearing and it was conducted *in absentia*. Moreover, Appellant has utterly failed to even argue that he was prejudiced by the delay in filing the complaint. We decline any invitation to create a prejudice argument for Appellant. Appellant's second issue fails.

*Conducting the Preliminary Hearing In Absentia*

Appellant next asserts that it was error to conduct his preliminary hearing *in absentia*. Specifically, Appellant argues that a preliminary hearing is a critical stage of the criminal proceedings, and he has a right to counsel under "Pa. Const. 1-9" and "14th and 6th Amendment." Appellant's Brief at

11. The trial court addressed this claim in the following manner.

> As to the claim that [Appellant's] rights were violated in that the preliminary hearing was held in his absence, this [c]ourt finds that said claim is without merit. Notice of the hearing was sent to his address as listed at the time. The hearing was held in his absence in accordance with Rule 543 of the Pennsylvania Rules of Criminal Procedure. Additionally, the [c]ourt finds that because … [Appellant] had a jury trial and was found guilty, any claim of a defect as to the preliminary hearing is immaterial. **_See Commonwealth v. Tyler_**, 587 A.2d 326 (Pa. Super. 1991). [Appellant] has failed to point to any other claim of any merit. As such, this claim is denied.

TCO at 9. We agree with this analysis. Appellant does not allege here that he did not receive a full, fair, and impartial trial. Once Appellant proceeded to his jury trial, any defect in the preliminary hearing procedure became moot. **_Tyler_**, 587 A.2d at 328; **_see also Commonwealth v. Owens_**, 649 A.2d 129, 135 (Pa. Super. 1994) ("Once the guilty verdict was entered, [the a]ppellant's argument that [the district magistrate] should have been disqualified becomes moot."). Accordingly, Appellant is not entitled to relief and we need not consider this claim further.

*Ineffective Assistance of Counsel*

Appellant purports to raise claims of counsel being ineffective, despite the fact that he proceeded *pro se* at trial and this is a direct appeal from his judgment of sentence. In **_Commonwealth v. Holmes_**, 79 A.3d 562 (Pa. 2013), the Pennsylvania Supreme Court reaffirmed the general rule which was initially set forth in **_Commonwealth v. Grant_**, 813 A.2d 726 (Pa. 2002), that "claims of ineffective assistance of counsel are to be deferred to [Post Conviction Relief Act ('PCRA'), 42 Pa.C.S. §§ 9541-9546] review; trial courts

should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." **Holmes**, 79 A.3d at 576 (footnote omitted); **see also Commonwealth v. Watson**, 310 A.3d 307, 310 (Pa. Super. 2024) (reiterating the holding in **Holmes**).

There are limited exceptions to this rule: (1) in the extraordinary case where the trial court determines that the ineffectiveness claim is both meritorious and apparent from the record; or (2) where good cause is shown for post-verdict review of ineffectiveness claims and the defendant has waived his right to file a petition under the PCRA. **Watson**, 310 A.3d at 310. A third exception, which requires trial courts to address ineffectiveness claims where the defendant is statutorily precluded from obtaining PCRA review, also may permit ineffectiveness review in a direct appeal. **Id.** Appellant fails to meet any of these exceptions.

Appellant argues that he is asserting ineffectiveness of counsel due to counsel's actions taken prior to trial. His ineffectiveness claims concern not having counsel at his formal arraignment, not challenging evidence at the preliminary hearing, and "not challenging charges that were not proven. These charges mainly would be the disregarding a traffic lane and careless driving." Appellant's Brief at 16. The last claim concerns Appellant's belief that his erratic driving, what the officer called "ping-ponging" in his lane of travel, was not captured on the video. Appellant also asserts that he wanted counsel to "please force the prosecutor to provide the evidnce [*sic*] that shows how and where blood was drawn." **Id.** at 17. We do not consider the merits

- 19 -

of any of these claims, as they must wait for consideration in a PCRA petition. *See Holmes*, *supra*. Appellant's fourth issue likewise does not garner him relief.

*Did the Commonwealth Establish that Appellant Properly Gave Consent to Draw his Blood?*

Although included in Appellant's statement of errors complained of on appeal, the trial court did not address this claim. While again not a model of clarity, Appellant asserts that he was arrested before his blood was drawn and that "police were racially biased and threatening and I was told to sign and be let free or don't and find a cell." Statement of Errors, 8/22/24, at unnumbered 10. Appellant essentially maintains that any consent to a blood draw was not voluntarily or knowingly given. This claim is wholly without merit.

At the suppression hearing, Trooper Marsh testified that once he found the white Nissan Altima, he followed it for about five minutes and observed the car weaving within its lane, crossing over the both the center line and the fog line. N.T. Suppression at 10. Thus, the trooper pulled the Altima over and approached the driver. *Id.* at 11. Appellant then failed field sobriety tests, exhibiting multiple indicators of intoxication. *Id.* at 12. Trooper Marsh then placed Appellant under arrest and took him to the hospital for the blood draw. *Id.* at 13. We note that the trial court specifically found Trooper Marsh to be a credible witness. Trial Court Opinion, 7/29/24, at 15. Appellant also testified at the suppression hearing, but he did not assert at that time that he

did not consent to go to the hospital for the blood draw. The following was his testimony:

> [Appellant:] This is the crazy part. It makes me feel like, was I drunk because I don't recall going to the hospital. I went to the state police. I remember getting my blood drawn, I think I heard them say I went to the hospital, but I don't remember even being in their custody long enough to be at the hospital. Maybe a lot was going on. My emotions were running through me, but they said there was no alcohol in me; right?

N.T. Suppression at 28. This was the extent of Appellant's suppression hearing testimony regarding his blood being drawn.

Moreover, the phlebotomist who drew Appellant's blood at the Indiana Regional Medical Center, Tianna Mackanick, testified at Appellant's trial. N.T. Jury Trial at 98-99. While not specifically remembering Appellant, Ms. Mackanick testified about the procedures she typically uses when drawing blood, and how the vials are labeled and sealed before being turned over to the police. *Id.* at 100.

Trooper Marsh also testified at Appellant's trial, stating that after Appellant failed the field sobriety tests, he placed Appellant in the police vehicle and took him to Indiana Regional Medical Center for a blood draw. *Id.* at 147. The trooper stated that he read the DL-26 form, which explains certain rights in relation to DUI blood tests, to Appellant in the receiving area of the hospital and Appellant signed the consent form. *Id.* at 148. The signed consent form was admitted into evidence. *Id.* at 150.

Notably, this court has reviewed the transcripts from Appellant's trial

and his pre-trial hearings, and nowhere does Appellant mention that he did not consent to get his blood drawn. Accordingly, this issue is waived for failing to present it to the trial court in the first instance. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). *See also Commonwealth v. Rice*, 331 A.3d 5, 10 (Pa. Super. 2025) (same).

Even if the issue had not been waived, it would still fail to entitle Appellant to relief. When an issue on appeal involves consideration of a trial court's findings of fact and credibility determinations, those findings are binding on the reviewing court, provided that they have support in the certified record. *Commonwealth v. Norton*, 201 A.3d 112, 121 (Pa. 2019). The trial court found Trooper Marsh credible, and that determination has support in the record. Despite Appellant's not remembering being at the hospital, Trooper Marsh testified about the blood test conducted at the hospital. Moreover, the consent form granting permission for the blood test, signed by Appellant, was placed in evidence. Thus, had we reached the merits of this claim, we would have concluded that Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Appellant next asserts that the Commonwealth did not prove that his summary convictions were supported by sufficient evidence. Appellant argues that he is raising this issue because the Commonwealth failed to provide "actual proof" and instead merely relied upon "testimony given by [the]

arresting officer." Appellant's Brief at 21. Basically, Appellant avers, without legal support, that a conviction cannot be maintained upon testimony alone.

> In reviewing sufficiency of the evidence claims, this Court must "determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." ***Commonwealth v. Olsen***, 82 A.3d 1041, 1046 (Pa. Super. 2013)…. [T]his Court will not "re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Id.*** The fact-finder may resolve any doubts regarding a defendant's guilt "unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Id.*** Moreover, "[t]he evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Id.*** A complainant's testimony alone is sufficient to sustain a conviction for a criminal offense, "so long as that testimony can address and, in fact, addresses, every element of the charged crime."

***Commonwealth v. Horlick***, 296 A.3d 60, 62 (Pa. Super. 2023).

Appellant was charged with violating 75 Pa.C.S. § 3309(1), which provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:
>
>> **(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309. He was also convicted of violating Section 3714 of the Vehicle Code:

> **(a) General rule.--**Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

75 Pa.C.S. § 3714.

First, we note that Appellant mischaracterizes the state of the evidence presented at his trial. The Commonwealth did not litigate their case solely based upon the police officer's testimony — it also played Trooper Marsh's dash-cam video, taken while he was following Appellant on the roadways that night. The dash-cam video was entered into evidence. N.T. Jury Trial at 158. Appellant did not object to the video being admitted into evidence. *Id.*

Moreover, the trooper's testimony established the elements for each of these summary offenses. Trooper Marsh testified that he observed Appellant's vehicle "cross the fog line … three times and the dotted center twice." *Id.* at 132. Further, Trooper Marsh stated that Appellant's car was "weaving within its own lane. That's a kind of pinballing back and forth to the dotted line, to the fog line." *Id.* According to the trooper, his observations while following Appellant's vehicle were "all indicators of an intoxicated driver." *Id.* at 135.

This testimony, standing alone, clearly sufficed to allow for the inference that Appellant had driven the vehicle in violation of Sections 3309 and 3714 of the Vehicle Code. *See Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 674–75 (Pa. Super. 2002) (finding the officer's testimony that he came upon the vehicle stopped at a stop sign, with the engine running and the appellant in the driver's seat, and the appellant was sleeping but pressed the accelerator and shifted gears purposefully upon wakening, was sufficient to

support the appellant's convictions for driving under suspension and related convictions).[8]

Appellant's brief makes no argument of insufficient evidence, other than claiming that the dash-cam video did not establish his erratic driving. Appellant ignores the legal fact that testimony, even standing alone, can suffice to establish a conviction if all elements of the charges are established. *See Commonwealth v. Ishankulov*, 275 A.3d 498, 504 (Pa. Super. 2022) (finding no merit to the appellant's claim that signage indicating road restrictions was not proven by sufficient evidence because the officer's testimony demonstrated that the sign was present).

Appellant also challenges the sufficiency of the evidence by claiming that the substance "Delta 9" is an ingredient found in hemp, not marijuana. In a very confusing way, Appellant appears to argue that he did not have a "controlled substance" in his blood because the U.S. Code, specifically the Agriculture Improvement Act, classifies Delta 9 as hemp, and because Delta 9 can be bought "at any given gas station in Pennsylvania." Appellant's Brief at 23. Once again, Appellant did not argue at trial that he only had hemp in his bloodstream, not marijuana. This waives his claim on appeal. *See* Pa.R.A.P. 302(a).

_____

[8] In his brief, Appellant states that the dash-cam video "did not satisfy the original evidence rule and brady [*sic*] rule." Appellant's Brief at 21. He does not explain these claims further with citations to pertinent caselaw or legal analysis, and he did not object to the video at trial. We thus will not consider these allegations further. *See* Pa.R.A.P. 302(a).

Even if we were to reach the merits of the claim, Appellant would not be entitled to relief. Appellant's argument is based upon 7 U.S.C. § 1639o, a part of a federal statue related to the distribution and marketing of agricultural products, for the following definition:

**(1) Hemp**

The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

7 U.S.C. § 1639o. This statute is irrelevant to Appellant's conviction. This definition is a part of the federal U.S. Code, is related to the regulations for hemp production, and is not a part of the criminal laws of Pennsylvania. Appellant was not charged with the unlawful production of hemp; he was charged because he had the active ingredients of marijuana in his bloodstream while driving.

At Appellant's trial, Dr. Isenschmid testified about the results of the testing of Appellant's blood as follows:

[Dr. Isenschmid:] … [I]n this particular case, the positive findings in the blood sample were those of ingredients in marijuana, specifically we found delta-9-THC at 5/8 nanograms per milliliter. That is the active ingredient in marijuana. And we also found delta-9-carboxy-THC at a concentration of 12 nanograms per milliliter. That is the breakdown product of delta-9-THC after some period of time that the body breaks it down.

So[,] you start, when you use marijuana, you initially get THC, and then that is slowly eliminated, and the THC is converted to carboxy-THC. … [W]e measured both the parent drug and the breakdown product in the blood.

N.T. Jury Trial at 112. When asked by the prosecutor if the lab report for Appellant's blood indicated that Appellant had THC and its metabolites in his system at the time the sample was taken, Dr. Isenschmid answered in the affirmative. *Id.* at 113. Dr. Isenschmid affirmed that the controlled substance found in Appellant's blood was a Schedule I controlled substance. *Id.* at 114.

That last sentence is critical. The DUI – controlled substance statute "does not require that any specific quantity of a drug be present in a defendant's blood or urine." ***Commonwealth v. Caraballo***, 325 A.3d 1025, 1030 (Pa. Super. 2024). Rather, to establish this offense, the Commonwealth must prove that a defendant drove a vehicle while any quantity of drugs are in his or her system. ***Id.***

The use of medical marijuana in Pennsylvania does not change this result. It remains unlawful in Pennsylvania to drive with **any** amount of a Schedule I substance in one's system. 75 Pa.C.S. § 3802(d)(1)(i); ***Commonwealth v. Dabney***, 274 A.3d 1283, 1291 (Pa. Super. 2022). Further, "medical marijuana remains a Schedule I controlled substance for purposes of Section 3802(d)(1)." ***Dabney***, 274 A.3d at 1291. The evidence here, which included testimony about the levels of the active ingredient in marijuana and marijuana metabolites being present in Appellant's blood at the time he was driving, was clearly sufficient to support his conviction. ***See id.*** Appellant's sufficiency claims are without merit.

*Suppression of the Evidence*

Appellant's final issue is that the trial court erred in failing to grant his motion to suppress. This Court's well-settled standard of review of a denial of a motion to suppress is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015) (cleaned up). The reviewing court's scope of review is limited to the record evidence from the suppression hearing. *Id.*

The Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, protect individuals from being subjected to unreasonable searches and seizures. *Commonwealth v. Green*, 298 A.3d 1158, 1162 (Pa. Super. 2023). Our Courts have developed three categories of interactions that may occur between ordinary citizens and police officers:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of

suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id.* at 1162-63 (citation omitted).

The present case involves an investigative detention. ***Commonwealth v. Spence***, 290 A.3d 301, 314 (Pa. Super. 2023) (noting that "a motor vehicle stop is generally a second-level interaction, an investigative detention").

[T]he Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." ***United States v. Cortez***, 449 U.S. 411, 417-418 (1981); ***see also Terry v. Ohio***, 392 U.S. 1 (1968). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." ***Prado Navarette v. California***, 572 U.S. 393, 397 (2014) (quotation altered); ***United States v. Sokolow***, 490 U.S. 1 (1989).

***Kansas v. Glover***, 589 U.S. 376, 380 (2020) (cleaned up).

Thus, we must consider whether the facts known to Trooper Marsh at the time he stopped Appellant's vehicle provided the requisite reasonable suspicion of criminal activity. ***See Commonwealth v. Jefferson***, 256 A.3d 1242, 1248 (Pa. Super. 2021) ("[T]he fundamental inquiry is an objective one, namely, whether the facts available to police at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate.") (citation omitted).

Because reasonable suspicion for a traffic stop is an objective inquiry, we must look at the facts available to the officer in question at the moment of the intrusion to evaluate whether a man of reasonable caution would believe that the action taken was appropriate. ***Commonwealth v. Gray***, 784 A.2d 137, 142 (Pa. Super. 2001). We must consider the totality of the circumstances when assessing the factual basis for the stop. ***Jefferson***, ***supra***. Reasonable suspicion exists only where the officer articulates specific observations which, in conjunction with the reasonable inferences derived from those observations, led him reasonably to conclude that criminal activity was afoot, and that the person stopped was involved with that criminal activity. ***Commonwealth v. Cunningham***, 287 A.3d 1, 8-9 (Pa. Super. 2022) (citation omitted).

Here, Appellant summarizes his argument on this issue in the following manner, which we produce *verbatim*:

> The relief I seek is for the suppression hearing decision to be reversed due to the fact that Commonwealth cannot provide proof of fact to support their testimony. Such as, proof of me ping ponging and of a complaint ever being made to have the officer following up on a complaint. Also that the trial courts did not deal with commonsense of determination of reasonable grounds or reasonable suspicion.

Appellant's Brief at 27. Once again, Appellant complains the evidence against him largely consisted of the officer's testimony, and that the dash-cam video did not corroborate the officer's description of Appellant's driving.

Importantly, Appellant did not include the issue about court error in denying his motion to suppress in his Rule 1925(b) statement. "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Smith**, 304 A.3d 35, 39 (Pa. Super. 2023). Appellant's issue is waived for appellate review.

Even if not waived, Appellant would not be entitled to relief. In evaluating whether the stop of Appellant's vehicle was supported by reasonable suspicion that criminal activity is afoot, we consider the totality of the circumstances, including the reliability of such factors as tips from private citizens which are obtained by police. **Commonwealth v. Muhammad**, 289 A.3d 1078, 1087 (Pa. Super. 2023). We stress that we are not dealing in this situation with an anonymous or confidential informant. "[I]dentified citizens who report their observations of criminal activity to police … are assumed to be trustworthy, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." **Id.** Here, the caller not only gave his name, Lawrence Marshall, but he also provided testimony at Appellant's trial. **See** N.T. Jury Trial at 75-87. In the case at bar, Trooper Marsh testified at Appellant's suppression hearing that he was notified via his radio dispatcher that

> there was an erratic driver that almost struck somebody. Dispatch advised us where the vehicle was supposedly located from this complainant. I then responded to that area and located the vehicle in question. I then followed the vehicle briefly to observe

any traffic violations. I observed the vehicle crossing the fog line, crossing the center line and moving within its lane. All due to my training and experience are signs of, [and] would give you a reasonable belief that[,] somebody is intoxicated behind the wheel.

N.T. Suppression at 6-7. Trooper Marsh indicated that it was a common practice for citizens to call in to the station with these types of reports. *Id.* at 9. Once the Altima was discovered, Trooper Marsh followed Appellant for approximately five minutes. *Id.* at 10. When asked what he observed during this time period, the trooper stated, "The vehicle was weaving within its lane. Some troopers refer to it as pinballing. It crossed over the fog line, crossed over the center line." *Id.*

After review, we conclude that the facts available to Trooper Marsh, including both the 911 call made by the private citizen and the officer's personal observations made while following Appellant, would warrant a man of reasonable caution to believe that criminal activity — namely, DUI — was afoot. Accordingly, even had we reached the merits of Appellant's claim, we would conclude that his suppression motion was properly denied in this case.

Finding all of Appellant's issues to be without merit, we affirm the judgment of sentence imposed.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/22/2025