2024 PA Super 234

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ANTHONY JOHN CARABALLO | : | |
| | : | |
| Appellant | : | No. 539 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 7, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0005006-2021

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY KUNSELMAN, J.:           **FILED: OCTOBER 9, 2024**

Anthony John Caraballo appeals from the judgment of sentence after a jury convicted him of driving under the influence ("DUI") of controlled substances, and the trial court convicted him of other Vehicle Code offenses.[1] Caraballo challenges the sufficiency of the evidence to support his DUI conviction and a jury instruction regarding expert testimony. We affirm.

Around 6:30 a.m., on October 19, 2021, State Trooper Anthony Stoltzfus was heading southbound on Route 472 in his patrol car. Caraballo was driving a pickup truck immediately in front of him. The truck's tires hit or rode on the white and yellow lane lines repeatedly for two minutes. *See* Commonwealth's Ex. 1, Patrol-Car-Dashboard-Camera Video (Redacted) at

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 75 Pa.C.S.A. §§ 1501(a) (driving without a license), 1543(b)(1)(iii) (driving with a suspended license), 3309(1) (disregarding the traffic lane), 3714(a) (careless driving), and 3802(d)(2) (DUI – general impairment by controlled substances).

0:04, 0:26, 0:36, 0:42, 0:47-0:58, 1:00-1:03, 1:14, 1:20, 1:26, 1:38-1:43. The trooper initiated a traffic stop. *See id.* at 1:39-2:02.

Caraballo and the trooper pulled their vehicles into the parking lot of a gas station. Trooper Stoltzfus approached the window of the pickup truck to speak with the driver and to investigate a possible DUI. Caraballo identified himself, but his "speech was extremely slurred." N.T., 11/8/22, at 22. "He was disheveled." *Id.* at 19. There was no smell of alcohol or drugs in the air. When asked if he was on anything, Caraballo admitted to having taken Vivitrol. The trooper did not know what Vivitrol was or its impact on driving ability. *See id.* at 40.

Caraballo moved lethargically. For example, when Trooper Stoltzfus asked him for his license and registration, instead of quickly reaching for them, Caraballo "mov[ed] . . . stuff around in a manner that wasn't like he was looking[. He was] kind of slowly moving throughout the vehicle." *Id.* at 20. Based on five years of police experience, impairment-recognition training, and prior interactions with people who had taken drugs, the trooper saw those indicia as "consistent with people [who were] under the influence of some kind of drugs." *Id.* at 23. Thus, he asked Caraballo to exit the vehicle and to take a series of field sobriety tests. *See id.* at 25-26.

Caraballo complied and manifested many indicators of impairment. During the instructions phase of the heel-toe test, he "was unable to stay in the starting position . . . He kept on moving his leg from [the starting] position to regain his balance." *Id.* at 29. Then, when performing the walk phase,

Caraballo repeatedly missed heel to toe, stepped off line, and used his arms to keep his balance. *See* Commonwealth's 1 at 12:05-12:35. When he turned around, he lost his balance and stepped on his foot. *See id.*

The one-leg-stand test also revealed signs of impairment. Upon raising his right leg, Caraballo began to wobble and had to use his arms to maintain balance. He only kept his foot off the ground for a count of 19 seconds, even though the test was supposed to last 30 seconds. *See id.* at 14:02-14:40.

Caraballo told Trooper Stoltzfus that he was tired, because he had been working all night. The trooper testified about his experience with other tired drivers; he had previously put eight to ten tired drivers through the same field sobriety tests. "They pass[ed]," because the trooper did not "see any indicators that [they were] under the influence of something." N.T., 11/8/22, at 34. According to the trooper, "Most of the time, if somebody is just tired and I pull them over, their demeanor changes rapidly . . . If you're tired and . . . get pulled over, most of the time, it perks you up." *Id.* at 35. Caraballo never perked up during the traffic stop or sobriety tests.

The trooper arrested Caraballo for DUI (controlled substances) and took him to a nearby hospital for chemical testing. During their ride in the patrol car, Caraballo kept falling asleep. When they arrived, Trooper Stoltzfus presented him with a DL-26 Form concerning "his rights, punishment that can happen if he [refused to] submit to a blood draw, and why [the trooper] request[ed] the blood draw . . . ." *Id.* at 39. Caraballo refused the blood-

draw test, even though the trooper "explained to him that this [was] his chance to prove . . . there was nothing in his system." *Id.* at 39-40.

The case proceeded to a jury trial. During the charging conference, the Commonwealth requested several jury instructions, including one that "expert testimony is not required for conviction under [75 Pa.C.S.A. §] 3802(d)(2)." *Id.* at 89. Caraballo objected to the inclusion of that charge. *See id.* at 90.

Regarding the absence of expert testimony, the trial court instructed the jury, "The Commonwealth is not required to offer any expert testimony, medical or otherwise, to prove a charge of driving under the influence of drugs or a combination thereof." *Id.* at 128. The jury convicted Caraballo of DUI; thereafter, the court convicted him of all related offenses.

The court imposed an aggregate sentence of two-years-nine-months to six years' incarceration, and this timely appeal followed.

Caraballo raises the following two appellate issues:

1.  Was the evidence presented . . . insufficient to prove beyond reasonable doubt that . . . Caraballo's inability to drive safely was caused by a drug or combination of drugs?

2.  Did the trial court err when it instructed the jury . . . ?

Caraballo's Brief at 8 (some punctuation omitted). We take the issues in turn.

First, Caraballo claims the Commonwealth offered insufficient evidence to convict him of DUI (controlled substances). He concedes that "there was sufficient evidence to prove [he] was unable to drive safely . . . ." *Id.* at 20. However, Caraballo believes there was "no evidence . . . that [he] was under

the influence of any drug, let alone to a degree which rendered him incapable of safe driving." ***Id.*** at 20-21. He argues that, even though "Trooper Stoltzfus testified that . . . Caraballo was 'under the influence of some sort of controlled substance or combined substances,' [the trooper] was not qualified as an expert witness in recognizing drug intoxication . . . ." ***Id.*** at 21. Thus, Caraballo contends the trooper's opinion "was insufficient to prove that [he] was, in fact, under the influence of a drug or combination of drugs to a degree which rendered him incapable of safe driving." ***Id.***

> The standard we apply in reviewing the sufficiency of the evidence is
>
> > whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the factfinder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated, and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Spence,*** 290 A.3d 301, 309 (Pa. Super. 2023) (quoting ***Commonwealth v. Gause***, 164 A.3d 532, 540-41 (Pa .Super. 2017) (*en banc*)).

Caraballo was convicted of 75 Pa. C.S.A. § 3802(d)(2) which provides:

§ 3802 Driving under influence of alcohol or controlled substance.

(d) Controlled substances.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa. C.S.A. § 3802(d)(2).

This section of the Vehicle Code "does not require that any specific quantity of a drug be present in a defendant's blood or urine." *Commonwealth v. Griffith*, 32 A.3d 1231, 1236 (Pa. 2011). Thus, to establish a violation of Section 3802(d)(2), the prosecution must only prove, beyond reasonable doubt, that a defendant used a drug or drugs, in any quantity, that caused him to drive unsafely. "This provision, by its plain text, does not . . . specify any particular manner by which the Commonwealth is required to prove that the defendant was under the influence of a drug." *Id.* at 1239.

As Caraballo recognizes, Trooper Stoltzfus opined that he was under the influence of a drug or drugs that impaired Caraballo's ability to drive safely on the morning of October 19, 2021. Nonetheless, Caraballo suggests that opinion was legally insufficient, because the trooper was not offered as an expert witness. This argument, however, goes to the admissibility of the opinion, not its legal sufficiency once the opinion is of record.

The Rules of Evidence dictate whether a witness may offer opinion testimony. *See* Pa.R.E. 701-704. Whether a witness may offer a particular opinion asks whether the opinion is admissible, not whether the opinion is legally sufficient to prove an element of the offense charged. Thus, Caraballo's contention that Trooper Stoltzfus was not qualified as an expert on drug intoxication goes to the admissibility of his opinion, not its legal sufficiency to prove causation under Section 3802(d)(2).

Critically, Caraballo did not object to the trooper offering opinion testimony during the trial on the grounds that he was not an expert. "A party may claim error in a ruling to admit . . . evidence only if . . . a party, on the record, makes a timely objection, motion to strike, or motion *in limine* . . . ." Pa.R.E. 103(a)(1)(A). Because Caraballo did not object to the trooper offering an opinion at trial, any claim that the trial court abused its discretion by admitting the trooper's opinion that a drug or combination of drugs caused Caraballo's unsafe driving is waived. *See id.* Once Trooper Stoltzfus' opinion was admitted without objection, it was part of the record, and the jury was free to consider it.

Trooper Stoltzfus told the jury that, based on his experience and his observations of Caraballo's truck and during the traffic stop, he believed Caraballo's use of a drug or drugs impaired his driving ability. Specifically, the trooper derived that opinion from Caraballo's (1) physical condition, (2) admission to having taken Vivitrol, (3) slow reaction time, (4) slurred speech, (5) poor performance on the field sobriety tests, and (6) absence of an alcohol

smell. In other words, Trooper Stoltzfus, who had several previous interactions with people who were tired and people who were under the influence of drugs, formed the opinion that Caraballo had used a drug or drugs, and that the drug(s) caused his impairment. As such, the trooper's opinion provided the causal link between the drug(s) in Caraballo's system and his unsafe driving as Section 3082(d)(2) requires.

Further, our review of the video reinforces Trooper Stoltzfus's opinion. *See* Commonwealth's Ex. 1. It reveals Caraballo's drug-impaired conduct, lack of balance, and slurred speech. The indisputable video evidence confirms the trooper's in-person opinion that Caraballo was on something. Because there was no indication Caraballo had consumed alcohol, Trooper Stoltzfus reached the next most logical conclusion: namely, a drug or a combination of drugs caused Caraballo's altered consciousness and impaired his driving.

Also, the video belies the parties' agreement that "there was no . . . evidence that Vivitrol was an impairing substance." Commonwealth's Brief at 5. When we view the video in the light most favorable to the Commonwealth, we observe that Caraballo began to confess to the trooper that he was *not* able to drive while taking Vivitrol and then changed his statement. When Caraballo said he was tired from working all night, Trooper Stoltzfus replied, "I've seen tired drivers, and I've seen drivers who are impaired. And they look pretty similar." Commonwealth's Ex. 1 at 7:39-7:43.

Caraballo then volunteered, "I've had to take . . . I - - I take Vivitrol." *Id.* at 7:44-7:46.

"Are you supposed to be driving on that?" the trooper asked. *Id.* at 7:51-7:52.

Caraballo started to say, "Ah, n - -," but then quickly said, "Huh?  Yeah!" *Id.* at 7:52-7:53.  Based on this video, the jury could have found that Caraballo was about to say "Ah, no," caught himself, and then changed his answer.

Finally, and most incriminating, Trooper Stoltzfus gave Caraballo the opportunity to provide the physical evidence to exonerate himself, but Caraballo refused.  The trooper took Caraballo to a hospital, informed him of the civil penalties for refusing a blood-draw test, and had Caraballo sign the DL-26 Form.  Caraballo chose the civil penalties over chemical testing.

"In any . . . criminal proceeding in which the defendant is charged with a [DUI] . . . , the fact that the defendant refused to submit to chemical testing . . . may be introduced in evidence along with other testimony concerning the circumstances of the refusal."  75 Pa.C.S.A. § 1547(e).  While no presumption of guilt automatically arises from the refusal, the jury may consider the refusal "along with other factors concerning the charge."  *Id.*  Otherwise, one could use drugs, "drive under the influence of those drugs, and avoid prosecution entirely simply by refusing a blood test.  We refuse to countenance this absurd result."  *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1268 (Pa. Super. 2010) (footnote omitted).

Like the trial court, we hold the jury could reasonably infer under Section 1547(e) that Caraballo knew he took **something** (or several things) that

- 9 -

impaired his driving ability. By refusing a blood-draw test, Caraballo deprived the Commonwealth of the scientific proof of what drug or drugs, if any, were inside him when he drove unsafely. Therefore, the jury could logically infer, beyond a reasonable doubt, that Caraballo knew he had taken a drug or drugs that he wished to conceal from the trooper, because he knew they rendered him unfit to drive. As the trial court opined, the jury could find that Caraballo's "refusal to have a blood test [showed] consciousness of guilt." Trial Court Opinion, 5/31/23, at 11. Where, as here, the finder of fact draws the reasonable inference that a defendant was conscious of his own guilt and hoped to escape culpability by refusing chemical testing, that refusal is legally sufficient evidence that the defendant was DUI.

In sum, between the video of the field sobriety tests, Trooper Stoltzfus' testimony and Caraballo's refusal to submit to a blood test, the Commonwealth offered sufficient evidence to prove, beyond a reasonable doubt, that Caraballo used a drug or drugs that caused his unsafe and impaired driving.

We dismiss Caraballo's first appellate issue as meritless.

For his second issue, Caraballo contends that the trial court improperly charged the jury. *See* Caraballo's Brief at 28-33. Specifically, he argues that the trial court mislead the jurors by stating that an expert witness was not required for the Commonwealth to convict someone of DUI under Section 3802(d)(2). In Caraballo's view, "it was for the jury to determine whether the Commonwealth's evidence, without expert testimony, was sufficient to prove

[his] guilt." ***Id.*** at 32. He "contends that, under the circumstances, expert testimony was necessary to tie [his] ingestion of his prescription medicine to his inability to drive safely." ***Id.***

When reviewing a trial court's jury instructions, we "will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper." ***Commonwealth v. Sandusky,*** 203 A.3d 1033, 1098 (Pa. Super. 2019).

Additionally, we note that

> [a] jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions.

***Id.*** (citations omitted).

Here, we find no abuse of discretion in the trial court's jury instruction, given how the case developed at trial. First, the objected to statement was one part of a much longer charge regarding the Commonwealth's burden of proof regarding the DUI offense.

Additionally, as noted above, Caraballo did not object to the police officer's testimony that linked Caraballo's ingestion of Vivitrol to his unsafe driving. Caraballo never challenged the trooper's testimony as an unqualified expert opinion. This lack of objection allowed the Commonwealth to prove all the elements of DUI based upon lay, rather than expert, testimony. As we

explained, any contention that the officer was not qualified to offer such testimony goes to the admissibility of the evidence, not its sufficiency.

Under the procedural posture of this case, by the time the case reached the jury, no expert opinion was required. "The need for expert testimony in a subsection 3802(d)(2) prosecution must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence. . . ." **Griffith**, **supra**, at 1239. Expert testimony is not necessary to establish impairment under subsection 3802(d)(2) where there exists other independent evidence of impairment. **Id**. Thus, the instruction that "the Commonwealth is **not required** to offer any expert testimony, medical or otherwise, to prove a charge of driving under the influence of drugs or a combination thereof" is consistent with the Supreme Court's decision in **Griffith** and the facts of this case.

Moreover, even if this was the type of case that might have required an expert to opine on the connection between the drug consumed and the defendant's impairment, the opinion of Trooper Stoltzfus was already in evidence. Hence, the trial court correctly instructed this particular jury that, as a matter of law, expert opinion was not required for a conviction under 3802(d)(2); the instruction did not unduly mislead the jury. To convict Caraballo, the jury only needed to believe the lay opinion testimony of the officer, to rely upon its own common sense and life experience after observing Caraballo's clearly impaired behavior displayed on the dashboard-camera

video, to infer that Caraballo's refusal to submit to a blood test showed consciousness of guilt, or some combination of this evidence.

We dismiss Caraballo's second and final appellate as meritless.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/09/2024