J-S40008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMAR MORTON | : | |
| | : | |
| Appellant | : | No. 625 MDA 2025 |

Appeal from the Judgment of Sentence Entered April 22, 2025
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001036-2024

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: JANUARY 15, 2026**

Lamar Morton appeals from the judgment of sentence, entered in the Court of Common Pleas of Lycoming County, following his convictions of one count each of driving under the influence (DUI)—controlled substance,[1] careless driving,[2] driving unregistered vehicle,[3] driving while operator privilege suspended or revoked,[4] driving without a license,[5] and failure to use safety belt.[6]  After careful review, we affirm on the basis of the well-written

_____

[1] 75 Pa.C.S.A. § 3802(d)(2).

[2] *Id.* at § 3714(a).

[3] *Id.* at § 1301(a).

[4] *Id.* at § 1543(a).

[5] *Id.* at § 1501(a).

[6] *Id.* at § 4581(a)(2)(ii).

opinion authored by the Honorable Eric R. Linhardt. **See** Trial Court Opinion, 6/5/25, at 1-16.

We adopt the trial court's factual summary set forth in its opinion, **see** **id.** at 3-7, but provide a truncated version here. On March 18, 2024, at 3:47 a.m., Pennsylvania State Police (PSP) Troopers Nicklas D. Coulston and Matthew Patrick executed a vehicle stop on Morton's vehicle at the intersection of Walnut and Grace Streets in the City of Williamsport, Lycoming County. Trooper Coulston spoke with Morton and observed that his eyes were glassy, bloodshot, and dilated, and he detected an odor of burnt marijuana coming from Morton's breath. Morton did not have a driver's license, his operating privileges had been suspended, he was not wearing a seatbelt, his vehicle was unregistered, and he did not have a medical marijuana card. As a result of his observations, Trooper Coulston asked Morton if he had smoked marijuana that night and Morton responded that he had smoked marijuana in the last two hours. Trooper Coulston then performed Standardized Field Sobriety Tests (SFSTs), Advanced Roadside Impaired Driving Enforcement (ARIDE) tests, and a modified Romberg test.

Trooper Coulston administered the walk-and-turn and one-leg-stand SFSTs,[7] as well as ARIDE testing. During the walk-and-turn, Morton was unable to maintain the starting position, started the test too soon, stopped

_____

[7] We note that Trooper Coulston also performed the Horizontal Gaze Nystagmus (HGN) SFST, but the trial court did not rely on the HGN as evidence of impairment and, thus, we do not reference it further. **See** Trial Court Opinion, 6/5/25, at 6 n.31.

walking during the test, raised his arms, missed the heel-to-toe movement, stepped off the line, and made an improper turn. During the one-leg-stand SFST, Morton swayed, put his foot down, and used his arms to balance. During the ARIDE test, where a pen was circled around Morton's head and Morton was instructed to follow it with his eyes, Morton's eyes did not converge. Trooper Coulston also administered the modified Romberg test, where Morton was directed to tilt his head back and close his eyes, count to thirty and, when he believes thirty seconds have elapsed, to tilt his head forward and say "stop." During the modified Romberg, Morton exhibited eyelid tremors, opened his eyes during the test, and took forty-eight seconds to say "stop." All of these clues exhibited that Morton was under the influence of a controlled substance.

As a result of Morton's performance on the SFSTs, ARIDE, and modified Romberg, he was transported to UPMC Williamsport Hospital for a blood draw. Trooper Coulston read Morton the DL-26B form, and Morton refused the blood draw. Morton was released from custody and sent home.

On August 2, 2024, the Commonwealth charged Morton, via Criminal Information, with the above-mentioned offenses. On January 27, 2025, the trial court conducted a non-jury trial, after which it found Morton guilty of all charges. The trial court ordered a pre-sentence investigation report and deferred sentencing. On April 22, 2025, the trial court sentenced Morton to an aggregate sentence of two to six weeks' imprisonment in the county jail,

and fines totaling $1,610.00.[8]  Morton did not file a post-sentence motion. Morton filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[9]

Morton now raises the following claim for our review:  "Was [the] evidence sufficient to convict [Morton of DUI—controlled substance]?"  Brief for Appellant, at 8.

Morton challenges his DUI—controlled substance conviction and contends that the Commonwealth failed to present sufficient evidence that he

_____

[8] The trial court imposed Morton's term of imprisonment on his conviction of DUI—controlled substance.  The trial court imposed the fines as follows: $100.00 Act 198 Fee and a $1,000.00 fine for Morton's conviction of DUI—controlled substance; $25.00 fine for Morton's conviction of careless driving; $75.00 fine for Morton's conviction of driving unregistered vehicle; $200.00 fine for Morton's conviction of driving while operating privileges suspended or revoked; $200.00 for Morton's conviction of driving without a license; and $10.00 fine for Morton's conviction of failure to use safety belt.

[9] On September 24, 2025, this Court remanded to the trial court for a determination of whether Morton's appellate counsel had abandoned him for failure to file the appropriate number of brief copies.  **See** Remand Jurisdiction Retained Order, 9/24/25, at 1-2; **see also** Order, 418 Judicial Administration Docket, at II(I) (Pa. 2014) (per curiam) ("Within seven days of the submission of any electronic filing, the electronic filer shall submit to the court a paper version of the electronic filing with as many copies as the court requires.").

On September 30, 2025, the trial court issued an order and opinion finding that Morton's appellate counsel had not abandoned him, but that the Lycoming County Public Defender's office was experiencing technical issues with PACfile. **See** Order and Opinion, 9/30/25, at 2-3.  The trial court found that appellate counsel had not received notices from this Court requiring hard copies of Morton's brief.  **See id.**  Additionally, appellate counsel, on October 1, 2025, filed an application to reinstate Morton's appeal and submitted the requisite number of paper copies.  **See** Application, 10/1/25.  On October 14, 2025, this Court granted appellate counsel's application and reinstated Morton's appeal.  **See** Order, 10/14/25.  This case is now properly before us.

was impaired. *See* Brief for Appellant, at 13-21. Morton argues that the Commonwealth failed to show he was unable to operate his vehicle safely where Trooper Coulson only testified to the outcome of the SFSTs but had observed no driving infractions. *See id.* at 14-19. Morton posits that merely failing SFSTs with no evidence of unsafe driving cannot satisfy the elements of DUI—controlled substance. *See id.* Morton further asserts that the Commonwealth failed to present any expert testimony regarding "how long the effects of marijuana last or if it was plausible [Morton] would be under the influence at the time of the stop." *Id.* at 19. Additionally, Morton posits that his blood draw refusal can only be considered as a "consciousness of guilt," not a "presumption of guilt." *Id.* at 19-21. Morton acknowledges that he was operating the vehicle. *See id.* at 13.

We adhere to the following standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the

evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The Vehicle Code defines DUI—controlled substance as follows:

**§ 3802.  Driving under influence of alcohol or controlled substance.**

* * *

**(d) Controlled substances.--**An individual may not drive, operate[,] or be in actual physical control of the movement of a vehicle under any of the following circumstances:

* * *

(2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate[,] or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2).

Expert testimony is not mandatory in every prosecution to establish that a defendant's inability to drive safely was caused by the ingestion of a controlled substance.  *Commonwealth v. Griffith*, 32 A.3d 1231, 1238-39 (Pa. 2011).  The need for expert testimony in a subsection 3802(d)(2) prosecution must be evaluated on a case-by-case basis, taking into account not just the specific drug at issue, prescription or otherwise, but also the nature and overall strength of the Commonwealth's evidence.  *See id.* at 1239.

"In any . . . criminal proceeding in which the defendant is charged with a [DUI] . . ., the fact that the defendant refused to submit to chemical testing . . . may be introduced in evidence along with other testimony concerning the circumstances of the refusal." 75 Pa.C.S.A. § 1547(e). "While no presumption of guilt automatically arises from the refusal, the [fact finder] may consider the refusal along with other factors concerning the charge." *Commonwealth v. Caraballo*, 325 A.3d 1025, 1031 (Pa. Super. 2025) (citation and quotation marks omitted). To permit otherwise would allow a person to "use drugs, drive under the influence of those drugs, and avoid prosecution entirely simply by refusing a blood test. We refuse to countenance this absurd result." *Id.* (citing *Commonwealth v. DiPanfilo*, 993 A.2d 1262, 1268 (Pa. Super. 2010)).

Instantly, as set forth by the trial court, the Commonwealth presented sufficient evidence to demonstrate Morton's impairment. *See* Trial Court Opinion, 6/5/25, at 8-10.[10] Indeed, the Commonwealth presented Trooper Coulston's observations including, but not limited to: the odor of burnt marijuana coming from Morton, failed SFSTs, failed ARIDE, failed modified Romberg, Morton's statements that he used marijuana one to two hours prior to driving, and his refusal to submit to a blood draw. *See id.* These factors, when considered together, reflect that the Commonwealth presented

_____

[10] The trial court also addressed the weight and sufficiency of Morton's other five convictions, but he has not raised those claims on appeal. *See id.* at 10-16.

sufficient evidence that Morton was incapable of safe driving. *See id.*; *see also Caraballo*, *supra*; *Smith*, *supra*. Further, as conceded by Morton, he was the operator and sole occupant of the vehicle. *See id.*; *see also* Brief for Appellant, at 13.

Mindful of the record, the applicable standard of review, the relevant case law, and Morton's brief,[11] we affirm on the basis of the trial court's thorough and well-reasoned opinion. *See* Trial Court Opinion, 6/5/25, at 1-16. Consequently, we afford Morton no relief. The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026

---

[11] The Commonwealth did not file a brief on appeal.

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY,
PENNSYLVANIA

COMMONWEALTH,

      vs.

LAMAR MORTON,

             Defendant.

: No. CR 1036-2024
:
:
:
:
: OPINION PURSUANT TO
: PA. R.A.P. RULE 1925(a)

## OPINION PURSUANT TO Pa. R.A.P. 1925(a)

AND NOW, this 5th day of June, 2025, the Court issues this Opinion pursuant to Rule 1925(a), Pennsylvania Rules of Appellate Procedure.[1] On May 9, 2025, Defendant Lamar Morton filed his Notice of Appeal[2] to the Superior Court from this Court's Sentencing Order dated and entered April 22, 2025[3] and the Verdict of Guilt dated January 27 and entered January 29, 2025.[4] On May 12, 2025, the Court issued an Order pursuant to Rule 1925(b),[5] and Defendant filed his Concise Statement of Matters Complained of on Appeal on May 28, 2025.[6] In his Concise Statement, he raises the following issues for appeal:[7]

    a. Appellant avers that the Commonwealth did not provide sufficient evidence at trial to prove him guilty beyond a reasonable doubt, whether based on his driving, based on signs of impairment after the stop, or based on his refusal to submit to a blood draw.

    b. The Commonwealth failed to prove that the Appellant was under the influence of a drug, furthermore, to a degree which would impair

---

[1] Pa. R.A.P. 1925(a) ("[U]pon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall ... file of record at least a brief opinion of the reasons for the order....").

[2] Defendant's "Notice of Appeal," filed May 9, 2025.

[3] Sentencing Order, dated and entered April 22, 2025.

[4] Verdict of Guilt, dated January 27 and entered January 29, 2025.

[5] Order Pursuant to Pa. R.A.P. 1925(b), dated and entered May 12, 2025. *See also* Pa. R.A.P. 1925(b)(1) ("If the judge entering the order giving rise to the notice of appeal ... desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record ... a concise statement of the errors complained of on appeal....").

[6] Defendant's "Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(B) Order," filed May 28, 2025. Defendant's Concise Statement was filed within 21 days after entry of this Court's Rule 1925(b) Order, and, thus, it was filed timely. Pa. R.A.P. 1925(b)(2)(i).

[7] Pa. R.A.P. 1925(b)(4)(vii) ("Issues not included in the [appellants' Concise] Statement [of Matters Complained of on Appeal] ... are waived.").

his ability to safely drive, operate, or be in actual physical control of the movement of a vehicle.[8]

These amount to challenges to the sufficiency and weight of the evidence adduced by the Commonwealth to convict the Defendant. For the reasons explained below, the Court believes that the Commonwealth presented sufficient evidence to convict the Plaintiff of the crimes with which he was charged and that the Court properly found that the weight of the evidence supports its verdict of GUILTY.

## I. BACKGROUND.

By Information filed August 2, 2024,[9] the Commonwealth charged the Defendant with DUI controlled substance—impaired ability—1st offense (Count 1),[10] Careless Driving (Count 2),[11] driving an unregistered vehicle (Count 3),[12] driving while operating privileges suspended or revoked (Count 4),[13] driving without a license (Count 5),[14] and failure to use safety belt—driver and front seat occupant

---

[8] Defendant's Concise Statement.

[9] "Information," filed August 2, 2024.

[10] 75 Pa. C.S. § 3802(d)(2) ("An individual may not drive, operate or be in actual physical control of the movement of a vehicle ... [when] [t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle"). This is an ungraded misdemeanor. 75 Pa. C.S. § 3803(b)(2) ("An individual who ... violates section 3802(c) or (d) and who has no prior offenses commits a misdemeanor for which the individual may be sentenced to a term of imprisonment of not more than six months and to pay a fine under [75 Pa. C.S.] section 3804").

[11] 75 Pa. C.S. § 3714 ("Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense"). This is a summary offense. *Id.*

[12] 75 Pa. C.S. § 1301(a) ("No person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration"). This is a summary offense. 75 Pa. C.S. § 1301(d) ("Any person violating the provisions of subsection (a) is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $75 or double the registration fee, whichever is greater, except when the vehicle was previously registered in this Commonwealth within 60 days of the commission of the offense whereupon the fine shall be $25").

[13] 75 Pa. C.S. § 1543 ("Except as provided in subsection (b), any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored is guilty of a summary offense and shall, upon conviction or adjudication of delinquency, be sentenced to pay a fine of $200"). This is a summary offense. *Id.*

[14] 75 Pa. C.S. § 1501(a) ("No person, except those expressly exempted, shall drive any motor vehicle upon a highway or public property in this Commonwealth unless the person has a driver's license

2

(Count 6).[15] The Court considered these charges at a bench trial held on January 27, 2025,[16] at which time the Court found Defendant GUILTY of all charges.[17] On April 22, 2025 the Court sentenced Defendant to pay a $100.00 Act 198 Fee, to an indeterminate term of imprisonment of two (2) to six (6) months in the County Prison and to pay a $1,000.00 fine as to Court 1, and to pay fines in various amounts totaling $510.00 as to Counts 2 through 6.[18]

The charges arose out of a traffic stop of Defendant's vehicle at 3:47 a.m. on March 18, 2024 by Pennsylvania State Police ("PSP") Troopers Nicklas D. Coulston and Matthew Patrick at or near the intersection of Walnut and Grace Streets in the City of Williamsport, Lycoming County, Pennsylvania.[19] Tpr. Coulston was the arresting officer and testified for the Commonwealth at Defendant's trial. At the time of his testimony, he had been stationed at the Montoursville PSP Barracks for approximately five years. He was trained to conduct DUI investigations and to

---

valid under the provisions of this chapter. This is a summary offense. 75 Pa. C.S. § 1501(d) ("As used in this subsection, the term "public property" includes, but is not limited to, driveways and parking lots owned or leased by the Commonwealth, a political subdivision or an agency or instrumentality of either. Any person violating subsection (a) is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $200, except that, if the person charged furnishes satisfactory proof of having held a driver's license valid on the last day of the preceding driver's license period and no more than one year has elapsed from the last date for renewal, the fine shall be $25").

[15] 75 Pa. C.S. § 4581(a)(ii)(A) ("Except for children under 18 years of age and except as provided in paragraphs (1) and (1.1) and subparagraph (i) ... [e]ach driver and front seat occupant of a passenger car, Class I truck, Class II truck, classic motor vehicle, antique motor vehicle or motor home operated in this Commonwealth shall wear a properly adjusted and fastened safety seat belt system"). This is a summary offense. 75 Pa. C.S. § 4581(b) ("Anyone who violates subsection (a)(2) or (3) commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $10. No person shall be convicted of a violation of subsection (a)(2)(ii) unless the person is also convicted of another violation of this title which occurred at the same time").

[16] Transcript of proceedings held on January 27, 2025 (the "Transcript"), filed May 16, 2025.

[17] Verdict and Order, entered January 27, 2025.

[18] Sentencing Order, entered April 22, 2025 (sentencing Defendant to pay a $100.00 Act 198 Fee, to a term of imprisonment of 2-6 months and to pay a $1,000.00 fine as to Count 1, to pay a fine of $25.00 as to Count 2, $75.00 as to Count 3, $200.00 as to Count 4, $200.00 as to Count 5, and $10.00 as to Count 6).

[19] Transcript, at 5-13.

3

administer Standardized Field Sobriety Tests ("SFST")[20] at the PSP Academy. As of the time of trial, he estimated that he had been involved in approximately 130 DUI investigations, approximately 75 of which had occurred as of the time of Defendant's arrest. Some of the investigations involved drivers allegedly under the influence of alcohol, and some involved controlled substances. He also administered field sobriety or ARIDE[21] tests or procured blood tests in connection with some of the investigations.[22]

While the Defendant's vehicle was stopped at a stop sign at the intersection of Walnut and Grace Streets, Tpr. Coulston checked the vehicle's registration and determined that it was expired and had been expired since May, 2023. Accordingly, Tprs. Coulston and Patrick, who were operating a marked PSP vehicle, initiated a traffic stop of Defendant's vehicle.[23] Tpr. Coulston approached the Defendant's vehicle and identified Defendant as the vehicle operator by means of Defendant's state issued PA ID card. It later emerged that Defendant did not have a driver's license, his operating privileges having been suspended, effective April 25, 2024 and not reinstated as of May 18, 2024, for a chemical test refusal pursuant to Section

---

[20] SFSTs are a battery of tests used to determine whether an individual is under the influence of alcohol or other drugs.

[21] ARIDE ("Advanced Roadside Impaired Driving Enforcement") tests involve screening for the observable effects of drug impairment.

[22] Transcript, at 5-7.

[23] *Id.*, at 9-12. A police officer has the authority to stop a vehicle upon reasonable suspicion that a violation of the Pennsylvania Vehicle Code is occurring or has occurred. 75 Pa. C.S. § 6308(b) ("Whenever a police officer ... has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title"). An officer may always stop a vehicle upon probable cause; however, reasonable suspicion will justify a stop under certain circumstances. *Com. v. Salter*, 121 A.3d 987, 992-93 (Pa. Super. 2015) (citing *Com. v. Feczko*, 10 A.3d 1285, 1290-91 (Pa. Super. 2010) (en banc)). Here, Tprs. Coulston and Patrick had probable cause to stop the Defendant's vehicle, as they had determined that his registration had been expired for almost a year.

4

1547 of the Vehicle Code[24] on January 5, 2024.[25] In addition to driving an unregistered vehicle while his operating privileges were suspended, Defendant, who was the operator of the vehicle, was not wearing his seatbelt at the time of the traffic stop.[26]

Upon interacting with the Defendant, Tpr. Coulston suspected that the Defendant was under the influence of a controlled substance. Tpr. Coulston testified that his suspicions were aroused by Defendant's appearance and behavior. With respect to Defendant's appearance, Tpr. Coulston identified

> General observations of [Defendant] when I was talking to him at the driver's side [of his vehicle], he had glassy, bloodshot eyes, a low, raspy voice, dilated pupils, marked reddening of the conjunctivae, and he had a[n] odor of burnt marijuana on is breath when he was talking to me.[27]

With respect to Defendant's behavior and demeanor, Tpr. Coulston identified Defendant's mood swings during the interaction.[28]

Upon smelling the odor of burnt marijuana, Tpr. Coulston asked Defendant whether he had smoked marijuana. Defendant responded that he had smoked marijuana one-two hours previously. When Tpr. Coulston asked whether Defendant had a medical marijuana card, Defendant responded that he did not.[29]

As a result of his suspicions, Tpr. Coulston requested that Defendant perform SFSTs, and Defendant agreed to do so.[30] Tpr. Coulston's body camera was active during the administration of all of the tests, and the video supported his testimony. Tpr. Coulston administered the horizontal gaze nystagmus ("HGN"), walk-and-turn

---

[24] 75 Pa. C.S. § 1547.
[25] Transcript, at 13-17.
[26] *Id.*, at 17.
[27] *Id.*, at 18.
[28] *Id.*
[29] *Id.*, at 24.
[30] *Id.*

5

and one-leg stand SFSTs, as well as ARIDE testing. Tpr. Coulston first administered the HGN test,[31] and the result caused him to administer further SFSTs.[32] During the HGN test, Tpr. Coulston asked Defendant whether there was anything wrong with his eyes, as Defendant's eyes appeared to be red.[33]

When performing the walk-and turn SFST, Defendant exhibited atypical mood swings during the instruction phase of the test, and he exhibited more than two clues of impairment during the test—including an inability to maintain the starting position, starting too soon, raising his arms, stopping walking during the test, missing the heel-to-toe movement, stepping off the line, and making an improper turn. As two clues indicate impairment and as Defendant exhibited more than two clues of impairment, Tpr. Coulston determined Defendant likely was impaired.[34]

Next, Tpr. Coulston administered the one-leg stand SFST. He testified there are four clues of impairment—sways, hops, puts foot down and uses arms to balance. Defendant exhibited three of those clues, all except hopping. Exhibition of two or more clues constitutes evidence of impairment, so he determined again that Defendant likely was impaired.[35]

He administered the ARIDE test,[36] which involves moving a pen in a circle around the Defendant's head and checking whether the Defendant's eyes converge.

---

[31] The Court did not rely on testimony concerning Defendant's performance on the HGN test as to evidence of Defendant's impairment, or lack thereof, but it permitted the testimony to establish what Tpr. Coulston did as a consequence of Defendant's performance. The results of the HGN test are inadmissible at trial as substantive proof of impairment; however, those same results can establish probable cause to arrest the defendant for driving under the influence, as probable cause to arrest can be supported by evidence that is inadmissible at trial. *Com. v. Weaver*, 76 A.3d 562, 566-67 (Pa. Super. 2013) (citing *Brinegar v. United States*, 69 S. Ct. 1302 (1949); *Com. v. Devlin*, 289 A.2d 237 (Pa. Super. 1972)).
[32] Transcript, at 20-21.
[33] *Id.*, at 25.
[34] *Id.*, at 27-29.
[35] *Id.*, at 29-30.
[36] He testified to the special training he received to administer this test. *Id.*, at 30-31.

They did not in this instance, demonstrating, according to Tpr. Coulston, further evidence of impairment.[37]

The final test he administered was the modified Romberg test, where the Defendant is directed to tilt his head back and close his eyes, then count to thirty and, when Defendant believes thirty seconds have elapsed, he is to move his head forward, open his eyes and say, "stop." Defendant exhibited a number of clues of possible marijuana use, including eyelid tremors, opening his eyes during the test and taking forty-eight (48) seconds to complete the test. Tpr. Coulston testified that these clues specifically indicated possible marijuana use.[38]

In light of Defendant's performance on the roadside tests, the noted odor of marijuana, and Defendant's admission that he had recently smoked marijuana, Tpr. Coulston concluded Defendant was under the influence of one or more controlled substances, rendering him incapable of operating a motor vehicle safely. He placed Defendant under arrest and transported him to UPMC Williamsport Hospital's Emergency Room for a blood draw. Tpr. Coulston read Pennsylvania Department of Transportation form DL-26B to Defendant. The form informs a defendant of his right to submit or to refuse a blood draw. He signed the form certifying that he read the form to Defendant in its entirety and signed again indicating Defendant refused to sign the form. Defendant also refused to submit to a blood draw, whereupon he was released from custody and sent home.[39]

No further witnesses testified at the trial, and counsel for the Commonwealth and the Defendant argued their respective positions to the Court.[40] The Court found

---

[37] Id.
[38] Id., at 31-33.
[39] Id., at 33-37.
[40] Id., at 43-49.

7

the testimony of Tpr. Coulston to be credible and, based upon the testimony and the exhibits presented by the Commonwealth, the Court found the Defendant guilty of all charges.[41] The Court also indicated it would ask for a pre-sentence investigation and would scheduling sentencing 60-90 days in the future.[42] On April 22, 2025, the Court sentenced the Defendant as previously indicated.

## II. LAW AND ANALYSIS.

### A. The Commonwealth adduced sufficient evidence at trial to support Defendant's convictions of the offences charged.

Sufficient evidence supports a criminal conviction if "the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, ... [was] sufficient to prove every element of the offense beyond a reasonable doubt."[43] The Commonwealth need not preclude every possibility of innocence, and it may sustain its burden entirely with circumstantial evidence.[44] "Evidence will be deemed to support the verdict when it establishes each element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt."[45]

As the Superior Court has explained,

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

---

[41] Id., at 49-52.
[42] Id., at 50-51.
[43] Com. v. Keister, 292 A.3d 1138, 1141 (Pa. Super. 2023) (quoting Com. v. Palmer, 192 A.3d 85, 89 (Pa. Super. 2018)).
[44] Id.
[45] Com. v. Teems, 74 A.3d 142, 144 (Pa. Super. 2013) (quoting Com. v. Toland, 995 A.2d 1242, 1245 (Pa. Super. 2010) (citations omitted)), alloc. denied 79 A.3d 1098 (Pa. 2013).

8

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. ... Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.[46]

Count 1 of the information charged Defendant with operation of a motor vehicle while under the influence of a controlled substance. Section 3802(d)(2) of the Vehicle Code provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle [when] ... [t]he individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle."[47] The Commonwealth must prove "that [the defendant] was 'under the influence of a drug to a degree that impairs' his or her ability to safely drive or operate a vehicle."[48] It is not required to prove that the driver had a specific amount of a drug or combination of drugs in his system.[49] The Commonwealth does not need to introduce expert testimony to establish impairment due to a controlled substance; it may introduce other independent evidence of impairment, and a lay witness may testify to someone's readily observable physical condition or appearance without formal medical training.[50]

Defendant did not submit to a blood draw here, but the Commonwealth may prove that a person is incapable of safe driving through failure of a field sobriety test.[51] In *Commonwealth v. Mobley*, the Superior Court found that sufficient

---

[46] *Com. v. Jones*, 271 A.3d 452, 457-58 (Pa. Super. 2021) (quoting *Com. v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017) (quoting *Com. v. Antidormi*, 84 A.3d 736 (Pa. Super. 2014))).
[47] 75 Pa. C.S. § 3802(d)(2). *See, supra*, n.1.
[48] *Com. v. Williamson*, 962 A.2d 1200, 1204 (Pa. Super. 2008) (quoting 75 Pa. C.S. § 3802(d)(2) and citing *Com. v. Collins*, 810 A.2d 698 (Pa. Super. 2002)), alloc. denied, 980 A.2d 608 (Pa. 2009).
[49] *Com. v. Tarrach*, 42 A.3d 341, 345 (Pa. Super. 2012) (*citing Williamson, supra*, 962 A.2d at 1204 and *Com. v. Griffith*, 32 A.2d 1231, 1238 (Pa. 2011)).
[50] *Griffith, supra*, 32 A.2d at 1239-40.
[51] *Com. v. Mobley*, 14 A.3d 887, 890 (Pa. Super. 2011) (citing *Com. v. Palmer*, 751 A.2d 223 (Pa. Super.2000)).

9

evidence supported the defendant's conviction for DUI-General Impairment where the defendant failed four field sobriety tests, smelled of alcohol and coasted through a stop sign with police officer in plain view.[52] In so holding, the Court stated that "[t]his evidence viewed in a light most favorable to the Commonwealth cannot be considered so weak and inconclusive that no probability of fact can be drawn from the circumstances. Accordingly, Appellant's sufficiency claim must fail."[53]

Here, the Defendant failed five field sobriety tests, smelled of burnt marijuana, exhibited physical and behavioral signs of impairment, and admitted to having smoked marijuana one-two hours before he was arrested. In addition, as confirmed by the body camera footage,[54] Defendant's speech was slurred and he showed signs of impairment.[55] As in *Mobley*, *supra*, this evidence, viewed in the light most favorable to the Commonwealth, cannot be considered so weak and inconclusive that no probability of fact can be drawn from the circumstances. The Commonwealth indisputably submitted sufficient evidence that Defendant drove, operated or was in actual physical control of the movement of a vehicle when he was under the influence of a drug or combination of drugs to a degree which impaired his ability to drive, operate or be in actual physical control of the movement of the vehicle safely. Thus, Count 1 was supported by sufficient evidence.

Count 2 of the Information charged Defendant with driveing a motor vehicle in careless disregard for the safety of persons or property. Under the Vehicle Code, a person is prohibited from driving a vehicle in careless disregard for the safety of

---

[52] *Id.*

[53] *Id.*

[54] Commonwealth's Trial Exh. 4.

[55] A defendant may be found guilty of operating a motor vehicle under the influence of a controlled substance when he is under the influence of marijuana, even if the marijuana was consumed lawfully. *See, e.g., Com. v. Smith*, 320 A.3d 674 (Pa. Super. 2024), alloc. denied, 333 A.3d 301 (Pa. 2025).

persons or property.[56] The *mens rea* requirement for conviction of this offense is operation of a vehicle in careless disregard for the rights and safety of others.[57] The Commonwealth adduced evidence showing that Defendant operated a motor vehicle while under the influence of marijuana. Operation of a motor vehicle under those circumstances is, at least, careless, which equates to operation of a vehicle in careless disregard for the rights and safety of others.[58] In order to secure a conviction of careless driving, the Commonwealth "need only demonstrate that a defendant's actions showed a 'careless disregard of the rights or safety of others.' "[59] As indicated above, the Commonwealth adduced substantial evidence of that. Thus, Count 2 was supported by sufficient evidence.

Count 3 of the Information charged Defendant with operation of an unregistered motor vehicle. Under the Vehicle Code, a person is prohibited from driving or moving upon any highway any vehicle which is not registered in this Commonwealth, unless the vehicle is exempt from registration.[60] Here, the Commonwealth introduced a copy of the vehicle registration information from the Department of Transportation showing that Defendant's vehicle was not registered at the time he was stopped on May 18, 2024 and that it had not been registered since May, 2023.[61] The vehicle was a conventional automobile, and there is no suggestion it was exempt from registration. Thus, Count 3 was supported by sufficient evidence.

---

[56] 75 Pa. C.S. § 3714

[57] *Com. v. Bullick*, 830 A.2d 998, 1001-03 (Pa. Super. 2003). "The *mens rea* requirement applicable to Section 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." *Com. v. Sanders*, 259 A.3d 524, 529 (Pa. Super. 2021) (en banc) (quoting *Com. v. Gezovich*, 7 A.3d 300, 301 (Pa. Super. 2010) (internal quotations and citations omitted)).

[58] *Bullick, supra*, 830 A.2d at 1003 (citing *Com. v. Huggins*, 790 A.2d 1042, 1047 (Pa. Super. 2002)).

[59] *Com. v. Glassman*, 518 A.2d 865, 869 (Pa. Super. 1986).

[60] 75 Pa. C.S. § 1301(a).

[61] See Commonwealth's Trial Exh. 2.

Count 4 of the Information charged Defendant with driving a motor vehicle while his operating privileges were suspended or revoked. Under the Vehicle Code, a person is prohibited from driving a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored.[62] Here, the Commonwealth introduced a copy of the Defendant's driver's record from the Department of Transportation showing that Defendant's license was suspended in April, 2024 and had not been restored as of the time he was stopped on May 18, 2024.[63] Thus, Count 4 was supported by sufficient evidence.

Count 5 of the information charged the Defendant with driving a motor vehicle on a highway without a valid driver's license. Under the Vehicle Code, a person, unless expressly exempted, is prohibited from driving any motor vehicle upon a highway or public property in this Commonwealth without a valid driver's license.[64] As indicated above, the Commonwealth introduced a copy of the Defendant's driver's record from the Department of Transportation showing that at the time Defendant was stopped on May 18, 2024, he did not have a valid driver's license.[65] There was no suggestion that he was exempt from the requirement of having a valid license. Thus, Count 5 was supported by sufficient evidence.

Count 6 of the information charged the Defendant with driving a passenger car without a properly adjusted and fastened safety seat belt system. Under the Vehicle Code, each driver and front seat occupant of a passenger car must wear a properly adjusted and fastened safety seat belt system.[66] Tpr. Coulston testified

---

[62] 75 Pa. C.S. § 1543.
[63] See Commonwealth's Trial Exh. 3.
[64] 75 Pa. C.S. § 1501(a).
[65] See Commonwealth's Trial Exh. 3.
[66] 75 Pa. C.S. § 4581(a)(ii)(A).

12

Defendant was not wearing a seat belt, and the Defendant admitted the same. Also, the body camera footage shows he was not wearing a seatbelt at the time he was stopped. Thus, Count 6 was supported by sufficient evidence.

Accordingly, the Court believes that the Commonwealth introduced sufficient evidence to enable the Court, as finder of fact, to find the Defendant guilty beyond a reasonable doubt of the charges levied in Counts 1 through 6 of the Information.

### B. The weight of the evidence adduced by the Commonwealth supports Defendants' conviction of the offenses charged.

A claim by the Defendant that the verdict is against the weight of the evidence concedes that there is sufficient evidence to sustain the verdict[67] and is addressed to the discretion of the court.[68] Accordingly, the trial court is not obliged to view the evidence in the light most favorable to the verdict winner.[69] Nevertheless, "the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."[70] Thus, a court may not find that the verdict was against the weight of the evidence "because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion."[71] Rather, a challenge to the weight of the evidence should be granted only where "the trial judge … determine[s] that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'"[72] "[A] new trial should be awarded [only] when the jury's verdict is so contrary to the evidence as to shock

---

[67] *Com. v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (citing *Com. v. Whiteman*, 485 A.2d 459 (Pa. Super. 1984)).

[68] *Widmer, supra*, 744 A.2d at 751–52 (citing *Com. v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994)).

[69] *Tibbs v. Florida*, 102 S. Ct. 2211, 2216 n. 11 (1982).

[70] *Jones, supra*, 271 A.3d at 457-58 (quoting *Brockman, supra*, 167 A.3d at 38 (quoting *Antidormi, supra*, 84 A.3d at 736)).

[71] *Widmer, supra*, 744 A.2d at 752 (citing *Thompson v. City of Phila.*, 493 A.2d 669, 673 (Pa. 1985)).

[72] *Id.* (citation omitted).

one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."[73]

With respect to Counts 3-6 of the Information, the evidence is uncontradicted that Defendant operated an unregistered vehicle, operated a vehicle while his operating privileges were suspended, operated a vehicle without a valid driver's license, and operated a vehicle without wearing his seatbelt. Thus, the Court believes that the weight of the evidence supports Defendant's convictions of those counts. With respect to Count 2, Defendant's admission that he smoked marijuana one-two hours before being stopped, coupled with the visual signs of his impairment revealed by the bodycam footage from the stop, establishes that he operated a vehicle "carelessly."[74] Thus, the Court believes that the weight of the evidence supports the Defendant's conviction of that offense.

With respect to Count 1 of the Information, charging Defendant with operation of a motor vehicle while under the influence of a controlled substance, the Court also finds that the weight of the evidence supports his conviction of that offense. The Court sat as fact-finder during the Defendant's trial, which means that the Court was responsible for passing on the credibility of the witnesses and the weight of the evidence produced, while remaining free to believe all, part or none of the evidence presented.[75] As the Superior Court has explained

> Although the finder of fact may make reasonable inferences from the testimony presented, the "inferences must flow from facts and

---

[73] *Brown*, *supra*, 648 A.2d at 1189 (citing *Thompson*, *supra*, 493 A.2d at 672).
[74] Our Supreme Court has held that driving while intoxicated is not "reckless" *per se* for purposes of the aggravated assault statute, while noting that it is "a gross deviation from the standard of care a reasonable person would observe." *Com. v. O'Hanlon*, 653 A.2d 616, 617 (Pa. 1998). The Court finds that this "gross deviation from the standard of care a reasonable person would observe," when coupled the visible evidence that Defendant was impaired, establishes that, when Defendant chose to drive his vehicle while under the influence of marijuana, he acted in a manner that was "more than ordinary negligence or the mere absence of care under the circumstances." *See Bullick*, *supra*, 830 A.2d 1001-03 (setting forth the *mens rea* for careless driving).
[75] *Com. v. Spence*, 290 A.3d 301, 309 (Pa. Super 2023).

14

circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the [fact-finder] of an accused's guilt beyond a reasonable doubt." "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review."[76]

At the time of trial, the Court found the testimony of Tpr. Coulston, the sole witness who testified at trial, to be credible.[77] The Court has not received any new evidence that would cause it to reconsider its assessment of the witnesses' credibility, and it is not inclined to do so. Tpr. Coulston's testimony and the documentary evidence introduced by the Commonwealth establish that the Defendant failed five field sobriety tests, smelled of burnt marijuana, exhibited physical and behavioral signs of impairment, and admitted to having smoked marijuana one-two hours before he was arrested. Moreover, the Court viewed Tpr. Coulston's body camera footage of the interaction with the Defendant, which revealed that the Defendant's speech was slurred and that he showed signs of impairment.

From the evidence presented, the Court made a reasonable inference that the Defendant was driving while under the influence of a controlled substance. This "inference[ ] … flow[s] from facts and circumstances proven in the record, and … [is] of such volume and quality as to overcome the presumption of innocence and [as to] satisfy the [Court] of [the Defendant's] guilt beyond a reasonable doubt."[78] Understanding that the Commonwealth need not preclude every possibility of innocence and may sustain its burden of proving Defendant guilty beyond a reasonable doubt entirely with circumstantial evidence,[79] the Court found at the time

---

[76] Id. (quoting Com. v. Scott, 597 A.2d 1220, 1221 (Pa. Super. 1991).
[77] Transcript, at 49.
[78] Spence, supra, 290 A.3d at 309.
[79] Keister, supra, 292 A.3d at 1141 (quoting Palmer, supra, 192 A.3d at 89).

15

of trial that the weight of the evidence supports Defendant's conviction of the offense charged in Count 1 of the Information and that its decision was not based on conjecture and speculation. Thus, the Court believes that the weight of the evidence supports the Defendant's conviction of that offense.

Accordingly, the Court believes that the weight of the evidence introduced at trial supports the Court, as finder of fact, finding the Defendant guilty beyond a reasonable doubt of the charges levied in Counts 1 through 6 of the Information.

## III. CONCLUSION.

For the reasons explained above, the Court believes that it properly convicted Defendant of the crimes with which he was charged.

BY THE COURT,

Eric R. Linhardt, Judge

ERL/bel

cc:   Lindsay Sweeley, Esq., *Lycoming County District Attorney's Office*
      Giovanna Daniele, Esq., *Lycoming County Public Defender's Office*
      Lamar Morton, *729 W 4th St., 2nd Fl., Williamsport, PA 17701*

16